IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

HEART K LAND & CATTLE CO., INC.,

                    Plaintiff,

        vs.

MICHAEL A. LONG, FRANCES A.
SAKAL, LAUREN C. LONG, UNITED
STATES OF AMERICA, MONTANA
DEPARTMENT OF REVENUE, et al.,

                    Defendants.

―――――――――――――――――――

FRANCES A. SAKAL,

                    Counterclaimant,

        vs.

HEART K LAND & CATTLE CO., INC.,
UNITED STATES GOVERNMENT
DEPARTMENT OF THE TREASURY,
MONTANA DEPARTMENT OF
REVENUE, et al.,

                    Counter-Defendants.

CV 12-162-BLG-DWM-JCL


FINDINGS AND
RECOMMENDATION

LAUREN C. LONG,

                Counterclaimant,

    vs.

HEART K LAND & CATTLE CO., INC.,
UNITED STATES GOVERNMENT
DEPARTMENT OF THE TREASURY,
MONTANA DEPARTMENT OF
REVENUE, et al.,

                Counter-Defendants.

_____

UNITED STATES OF AMERICA,

                Counterclaimant,

    vs.

HEART K LAND & CATTLE CO, INC.,
FRANCES A. SAKAL, LAUREN C.
LONG, MONTANA DEPARTMENT OF
REVENUE, and MICHAEL A. LONG,

                Counter-Defendants.

This matter is before the Court on Defendant United States' Fed. R. Civ. P.

56 motion for summary judgment on its counterclaims asserted in this action. For

the reasons discussed, the Court recommends the motion be granted in limited part

with respect to Defendant Michael Long's 2010 federal tax liability, but denied in

all other respects.

## I.    BACKGROUND

Heart K Land and Cattle Co., Inc. ("Heart K") commenced this quiet title action to resolve issues as to competing interests the various parties to this lawsuit possess in real property located in Park County, Montana. The property is identified by the parties as the "Suce Creek Property."

On July 12, 2010, the previous owners of the Suce Creek Property conveyed the property by Warranty Deed to "Mike Long and Lauren Long, husband and wife, as joint tenants[.]" (Doc. 86-2 at 48-51.) Defendant Frances Sakal, Lauren's mother, also asserts she acquired an interest in the property at that time because she contributed financially to the purchase of the property, and she loaned money to Michael and Lauren for the purchase of the property.

Michael operated a construction business under the name MTL Project Management and Construction ("MTL"). He and MTL worked for Heart K.

During the course of Heart K's business relationship with Michael and MTL, Heart K discovered information indicating that Michael had engaged in billing practices that caused Heart K to suffer financial losses. Consequently, Heart K terminated its business relationship with Michael and MTL, and informed Michael it would seek to recover its losses from him and MTL.

Around the time of the referenced dispute with Heart K, Michael conveyed all of his interest in the Suce Creek Property by quitclaim deed to Sakal on February 16, 2011.

On April 11, 2011, Heart K filed a lawsuit against Michael and MTL regarding their business dispute. The law suit was filed in the Montana Sixth Judicial District Court, Park County, Cause No. DV 2011-62 (the "Prior Litigation"). Heart K obtained a favorable judgment against Michael and MTL, and an award of monetary compensation for its losses.

Based on Heart K's favorable judgment entered in the Prior Litigation, Heart K commenced this action on June 21, 2012, in the Montana Sixth Judicial District Court, Park County, Cause No. DV 2012-117. Heart K named the Montana Department of Revenue and the United States of America as additional defendants in this action because each had filed tax lien interests against the Suce Creek Property based on taxes owed by Michael and Lauren Long. On December 20, 2012, the United States removed the action to this Court.

The United States filed counterclaims to collect federal taxes owed by Michael and Lauren Long, and to assert and protect its tax lien interests. The United States asserts Michael and Lauren are jointly liable for federal taxes owed in 2009, and that Michael is liable for federal taxes owed in 2010. In its first claim

for relief, the United States seeks to reduce Michael and Lauren's 2009 tax liability to a civil judgment, and in its second claim for relief the United States seeks entry of a civil judgment as to the amount of Michael's 2010 tax liability.

The United States also seeks to foreclose on its tax lien interests imposed against Michael's assets. In that regard, the United States' third claim for relief asserts Michael's conveyance of his interest in the Suce Creek Property to Sakal was a fraudulent conveyance. The United States requests the Court set that conveyance aside as void, thereby including the Suce Creek Property in Michael's assets from which the United States can satisfy its lien interests.

Finally, in its fourth claim for relief the United States seeks to foreclose on its lien interests. It alleges its liens attached to Michael and Lauren's real property interests in the Suce Creek Property, and that it is legally entitled to foreclose on its lien interests to collect their tax liabilities.

The United States moves for summary judgment on all four of its counterclaims.

## II.     APPLICABLE LAW

### A.     Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Once the moving party has

satisfied its burden, the non-moving party must go beyond the pleadings and

designate by affidavits, depositions, answers to interrogatories, or admissions on

file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*

*v. Cattrett*, 477 U.S. 317, 324 (1986). In deciding a motion for summary

judgment, the Court views the evidence in the light most favorable to the non-

moving party and draws all justifiable inferences in the non-moving party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer*

*Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B.    Application of Montana Law

In view of the Court's original jurisdiction over the United States'

counterclaims, jurisdiction over the other parties' claims that are advanced under

Montana law is founded upon the Court's supplemental jurisdiction under 28

U.S.C. § 1367(a). "[A] federal court exercising supplemental jurisdiction over

state law claims is bound to apply the law of the forum state to the same extent as

if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks,*

*Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). "The task of a federal court in a

diversity action is to approximate state law as closely as possible in order to make

sure that the vindication of the state right is without discrimination because of the

federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).

## III.  DISCUSSION

Heart K and Defendant Montana Department of Revenue do not oppose the United States' summary judgment motion as presented, but seek to contest the order of priority of the parties' respective interests in the Suce Creek Property. (Doc. 84 at 3.)  The United States recognizes the issue of the priority of the parties' interests remains to be determined at trial.  (Doc. 85 at 29 n.2.)

Sakal filed a brief in opposition to the United States' motion with which Lauren Long joins.  Michael, however, has not filed any brief in opposition to the United States' motion for summary judgment, and the time for doing so has passed.  Under Local Rule 7.1(d)(1)(B), Michael's "failure to file a response brief may be deemed an admission that the motion is well-taken."

But the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition or violates a local rule," and must "analyze the record to determine whether any disputed material fact [is] present."  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010).  *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (explaining that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate

its entitlement to judgment as a matter of law").

## A.    Michael Long and Lauren Long's Tax Liability

The United States moves for summary judgment to establish the existence of Michael and Lauren Long's tax liability for the 2009 and 2010 tax years, and to reduce that liability to a civil judgment in favor of the United States. The Court concludes the United States is entitled to a civil judgment, but only with respect to Michael's 2010 tax liability.

### 1.    Michael and Lauren Long's 2009 Tax Liability

The United States filed Form 4340, Certification of Assessments, as proof of the assessment of Michael and Lauren's federal tax liability for 2009. (Doc. 86-2 at 2-5.) The United States asserts their total joint tax liability for 2009 is $12,335.43. (Doc. 86-1 at ¶ 9.)

Sakal opposes the United States' summary judgment motion with respect to Michael and Lauren's 2009 tax liability. Sakal asserts that on December 20, 2013, Lauren paid the full amount of their joint tax liability. Sakal also submitted a copy of a Certificate of Release of Federal Tax Lien dated December 31, 2013, issued as a result of Lauren's tax payment. (Doc. 99-3 at 67-68.) The Certificate, signed by an employee of the Internal Revenue Service, recognizes that Michael and Lauren's federal tax liability and obligations for the 2009 tax year have been

satisfied. The Certificate also releases the federal tax lien that arose in favor of the United States with respect to that 2009 tax liability.

Based on the foregoing, Sakal has submitted evidence sufficient to raise a genuine issue of material fact as to whether Michael and Lauren are still liable for any further federal taxes assessed for the 2009 tax year, and whether the United States is entitled to a judgment on that liability. Thus, the United States' summary judgment motion as to its first claim for relief should be denied.

## 2. <u>Michael Long's 2010 Tax Liability</u>

With respect to Michael's federal tax liability for the 2010 tax year, the United States filed Form 4340, Certification of Assessments, as proof of the tax assessments supporting that liability. (Doc. 86-2 at 21-24.) As of December 31, 2013, Michael's tax liability for 2010 was $142,994.68. (Doc. 86-1 at ¶ 9.) Sakal does not oppose the United States' motion as to Michael's 2010 federal tax liability.

The Certificate of Assessments filed by the United States in this case constitutes prima facie evidence of Michael's taxpayer liability to the United States. *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994); *Oliver v. United States*, 921 F.2d 916, 921 (9th Cir. 1990). Because no party has opposed the United States' motion relative to Michael 2010 tax liability, the Court finds no

evidence exists in the record that raises a genuine issue of material fact as to that liability. Thus, the United States' summary judgment motion should be granted on its second claim for relief reducing Michael's 2010 tax liability to a civil judgment.

### B. **Fraudulent Transfer of Michael Long's Real Property Interest**

The United States moves for summary judgment to establish that Michael's February 16, 2011 conveyance of his interest in the Suce Creek Property to Sakal was a fraudulent transfer. Sakal opposes this aspect of the United States' motion, and for the reasons discussed the Court agrees that she has established that genuine issues of material fact exist as to the United States' fraudulent transfer claim.

To establish that Michael's conveyance to Sakal was fraudulent, the United States relies upon the provisions of the Montana Uniform Fraudulent Transfer Act, Mont. Code Ann. § 31-2-327 et seq. Montana law deems a transfer of an interest in property as fraudulent under the following circumstances:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

    (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Mont. Code Ann. § 31-2-333(1).

## 1.    <u>Intent to Hinder, Delay, or Defraud the United States</u>

The United States argues the evidence before the Court establishes that Michael's intent in transferring his interest in the Suce Creek Property to Sakal was to hinder, delay or defraud the United States with respect to the taxes he owed. But, the Court finds Sakal has sufficiently raised genuine issues of material fact regarding Michael's intent.

The Montana Uniform Fraudulent Transfer Act provides guidance in considering a transferor's intent. The statute states as follows:

(2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether:

    (a) the transfer or obligation was to an insider;

    (b) the debtor retained possession or control of the property transferred after the transfer;

(c) the transfer or obligation was disclosed or concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; or

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mont. Code Ann. § 31-2-333(2).

The United States asserts that consideration of the foregoing factors in the facts of this case supports the conclusion that Michael intended to defraud the United States.[1] But Sakal has raised genuine issues of material fact relative to

---

[1]Undisputedly, Michael's transfer to Sakal qualifies as a transfer to an "insider" under section 31-2-333(2)(a) because Sakal was Michael's mother-in-law at the time of the transfer. Mont. Code Ann. § 31-2-328(7)(a)(i). But this factor is not dispositive.

these statutory factors.

### a.    **Retained Possession or Control**

The United States argues Michael retained possession or control of the Suce Creek Property after he transferred his interest to Sakal. Following the February 16, 2011 transfer, Michael resided on the property from September 2011 to January 2012.

But Sakal asserts that Michael resided on the property during the referenced period of time because he was working as a general contractor constructing a house on the property. (Doc. 99-3 at 27-29.) Also, Sakal points out that Michael's occupancy of the property did not begin until six months after he transferred his interest to Sakal.

The United States also submitted evidence of utility bills related to the Suce Creek Property. The electricity and gas records from 2010, 2011, and 2013 were in Michael and Lauren's names. (Doc. 86-2 at 55-66.)

But Sakal has pointed to Lauren's deposition testimony wherein she states she and Sakal, not Michael, paid the utility bills for the Suce Creek Property. (Doc. 99-3 at 30.)

The United States next contends Michael made financial contributions to the construction of the house on the Suce Creek Property in the fall of 2011. Sakal

does not directly dispute this contention, but adds that she also paid for the construction of the house. (Doc. 99-3 at 28-29, 38.)

Based on the foregoing, the Court finds Sakal has identified genuine issues of material fact relative to the issue of whether Michael retained sufficient possession and control of the Suce Creek Property to suggest his transfer of his interest to Sakal was fraudulent. Thus, the facts relevant to this factor do not conclusively establish Michael's intent in support of the United States' motion.

### b.    Threat of Lawsuit and Liability

The United States argues the evidence establishes Michael transferred his interest in the Suce Creek Property to Sakal because he knew he was facing significant liability exposure to Heart K. The chronology of events relative to that issue are as follows:

On July 12, 2010, the previous owners of the Suce Creek Property conveyed the property by Warranty Deed to "Mike Long and Lauren Long, husband and wife, as joint tenants[.]" (Doc. 86-2 at 48-51.)

During the relevant time period, Michael operated a construction business under the name MTL Project Management and Construction ("MTL"). At some point, Heart K engaged Michael and MTL to oversee renovation projects on unrelated property that Heart K owned.

14

During the course of Heart K's business relationship with Michael and MTL, Heart K discovered information indicating that Michael had engaged in billing practices that caused Heart K to suffer financial losses. As a result, Heart K terminated its business relationship with Michael and MTL, and informed Michael it would seek to recover its losses from them. According to Heart K's presentation of the facts in this case, that termination and notice of remuneration occurred on February 14, 2011. (Doc. 86 at ¶ 3 (citing Heart K's Preliminary Pre-Trial Statement (Doc. 23).)

On February 16, 2011, Michael conveyed, by quitclaim deed, all of his interest in the Suce Creek Property to Sakal. (Doc. 86-2 at 53.)

On April 11, 2011, Heart K filed a lawsuit against Michael and MTL in the Montana Sixth Judicial District Court, Park County, Cause No. DV 2011-62 (the "Prior Litigation"). Through that Prior Litigation Heart K sought to recover its business losses allegedly caused by Michael in their prior business relationship. Included within Heart K's claims for relief in the Prior Litigation was a claim seeking to establish that Michael's February 16, 2011 quitclaim conveyance of his interest in the Suce Creek Property to Sakal was a fraudulent transfer which he allegedly made to avoid loss of the property by virtue of his potential liability to Heart K.

On May 4, 2012, the Montana Sixth Judicial District Court, Park County, entered its legal ruling and default judgment in the Prior Litigation against Michael and MTL, and in favor of Heart K. The court granted Heart K an award of monetary compensation for its losses in the total amount of $792,916.04. (Doc. 86-2 at 90.)

The United States asserts the timing of Michael's transfer of his interest in the Suce Creek Property to Sakal is evidence of his fraudulent intent. The United States contends the record demonstrates that Michael transferred his interest just 2 days after he had been informed by Heart K that his business relationship with Heart K was terminated, and that Heart K intended to seek remuneration of its financial losses from Michael and MTL.

Sakal, however, disputes that Michael was terminated on February 14, 2011. She points out there is no evidentiary material in the record of this case establishing February 14, 2011, as the actual date of Michael's termination. Rather, the United States relies only upon information in Heart K's Preliminary Pre-Trial Statement suggesting that was the date of Michael's termination, but the United States does not identify any evidentiary material in the record supporting that fact.

In contrast, Michael testified in his deposition that an agent of Heart K

16

confronted him regarding the billing discrepancies in February, 2011, but that the parties spent a couple weeks discussing and sorting out the dispute. (Doc. 86-4 at 128.) Further, Michael believed the dispute with Heart K would get resolved without litigation. (Doc. 86-4 at 131.) Therefore, the United States has not established the absence of a genuine issue of material fact as to the specific date that Michael's business relationship with Heart K was terminated.

Additionally, although Michael was aware of his dispute with Heart K around the time he transferred his interest to Sakal (doc. 86-4 at 11, 17, 130-131), it is important to note that there exists no evidence in the record suggesting Michael knew, as of the time of his transfer to Sakal, that his potential liability to Heart K would be in excess of $792,000. Rather, he stated he thought the dispute with Heart K would be resolved without litigation. (Doc. 86-4 at 131.)

Accordingly, the Court finds genuine issues of material fact exist relative to the issue of the timing of Michael's transfer of his property interest and the legal dispute with Heart K. This factor does not conclusively support the United States' motion to establish the transfer as fraudulent.

### c.     Michael Long's Assets

The United States next suggests that Michael's interest in the Suce Creek Property was his only asset from which the Internal Revenue Service could collect

17

taxes that he owed. But Michael testified that he had set aside $150,000 in a bank

account to pay his tax liabilities. (Doc. 86-4 at 124, 131.) Also, although he was

aware in general that federal tax liens could attach to real property he owned, he

states he did not consider that as a possibility in February, 2011. (Doc. 86-4 at

133.) This testimony raises genuine issues as to the assets Michael had available

to pay liabilities he had at the time he transferred his interest to Sakal.

### d.    Adequacy of Consideration Received for Transfer

The United States suggests Michael did not receive adequate compensation

from Sakal for his transfer of his interest in the Suce Creek Property to her. It

contends the Suce Creek Property was valued at around $625,000 in the fall of

2011, and in June, 2013.[2]  (Doc. 86-4 at 94, 206.)

But, as argued by Sakal, the value of property involved in an alleged

fraudulent transfer must be assessed as of the date of the challenged transfer.

*Montana Association of Credit Management*, 593 P.2d 1059, 1065 (Mont. 1979).

The original purchase price for the Suce Creek Property in 2010, purchased as

bare land, was around $150,000. (Doc. 86-4 at 95.) And by February, 2011, when

Michael transferred his interest to Sakal, the only construction that had occurred

---

[2]Sakal has similarly identified evidence suggesting the estimated market
value of the property as of December 19, 2013, after the house was constructed on
the property, was $550,000 to $575,000. (Doc. 99-3 at 101.)

18

on the house was the concrete foundation. (Doc. 86-4 at 182.) Based on those facts, Sakal suggests the value of the property would have been closer to $200,000 at the time Michael transferred his interests.

In any event, although the United States has identified evidence of the value of the Suce Creek Property after the house was constructed, it is significant that it has not presented any evidentiary material establishing the fair market value of the property as of the date of the February 16, 2011 transfer to Sakal. The United States, therefore, has failed to demonstrate the absence of a genuine issue of material fact as to the value of the property on February 16, 2011.

Further, as discussed in more detail below, Sakal has presented evidence suggesting she had loaned Michael and Lauren approximately $260,000, and that they still owed Sakal approximately $148,000 on the loan at the time Michael transferred his interest to Sakal. Also as discussed below, Michael, Lauren and Sakal assert Michael transferred the property to Sakal in exchange for her forgiveness of the balance of the loan in the amount of $148,000. Consequently, the United States has not established the absence of genuine issues of material fact as to whether Michael received adequate consideration for his transfer.

### e.    **Transfer Following Incurrence of Substantial Debt**

The United States asserts that Michael transferred his interest to Sakal

shortly after he had incurred substantial federal tax liabilities in 2009 and 2010.

Federal "tax liabilities, though unassessed, are deemed obligations due and owing

at the close of the taxable year." *Edelson v. Commissioner of Internal Revenue*,

829 F.2d 828, 834 (9th Cir. 1987). Michael and Lauren filed their 2009 federal tax

return reflecting taxes owed in the amount of $9,149. (Doc. 86-2 at 8.) And

Michael filed his 2010 federal tax return identifying federal taxes he owed in the

amount of $128,469. (Doc. 86-2 at 27.) Thus, Michael was aware of his total

federal tax liability as of the end of the 2010 tax year before he transferred his real

property interest to Sakal.

Notwithstanding, Sakal has presented evidence indicating that Michael had

set aside $150,000 to pay his taxes. (Doc. 86-4 at 124, 131.) Therefore, although

Michael had incurred federal tax liability prior to his transfer to Sakal, there exists

a genuine issue of material fact as to whether that debt was substantial in view of

his remaining assets, and whether the debt was one which he could not pay.

Based on all of the foregoing, the Court finds there remain numerous issues

of material fact relative to the United States' fraudulent transfer claim under Mont.

Code Ann. § 31-2-333(1)(a). Its summary judgment motion should be denied in

that respect.

### 2. **Receipt of Value for Transfer, and Debt Beyond Debtor's Ability to Pay**

In the alternative, the United States moves to establish Michael's transfer of his interest in the Suce Creek Property to Sakal as fraudulent under the provisions of Mont. Code Ann. § 31-2-333(1)(b)(ii). It contends Michael did not receive adequate compensation, consideration or value from Sakal in exchange for his transfer to her. It also argues Michael transferred his interest at a time when he knew he was incurring debts beyond his ability to pay them as they came due. But for the reasons discussed, the Court finds the facts relevant to the issues under section 31-2-333-(1)(b)(ii) are not undisputedly established in the United States' favor.

In support of its argument that Michael did not receive any consideration for the transfer of his interest to Sakal, the United States suggests that before the date of Michael's transfer he and Lauren had returned funds to Sakal that she had given to them to acquire the property. On May 11, 2010, Sakal paid Michael and Lauren $112,000, purportedly to purchase the Suce Creek Property and to acquire Michael's interest in the property. (Doc. 86-4 at 79, 207.)

But the United States argues Lauren returned the $112,000 to Sakal, on June 1, 2010, before the Suce Creek Property was conveyed to Michael and Lauren on

July 12, 2010, and long before Michael transferred his interest to Sakal in February, 2011. The United States has submitted a copy of a check dated June 1, 2010, for $112,000 written by Lauren to Sakal. (Doc. 86-4 at 81.) And Michael confirmed in his deposition testimony that he did not receive any consideration from Sakal *on the day* he executed the quitclaim deed to Sakal. (Doc. 86-4 at 134.) Consequently, the United States suggests the evidence of record conclusively establishes that Michael did not receive any consideration or value from Sakal in exchange for his transfer of his interest in the Suce Creek Property to Sakal.[3]

Sakal, in turn, has submitted evidentiary materials challenging the United States' suggestion. Under the Uniform Fraudulent Transfer Act, "value" is deemed to be given to a transferor if, "in exchange for the transfer [...,] an antecedent debt is [...] satisfied[.]" Mont. Code Ann. § 31-2-330(1). Sakal has submitted evidence indicating that the total amount of money she loaned to Michael and Lauren from 2008 through 2011 was in excess of $260,000, and that the $112,000 identified by the United States was not the only money she loaned to Michael and Lauren. (Doc. 99-3 at 58-65). Sakal asserts the $260,000 was a loan

---

[3]The United States suggests that Michael and Lauren instead purchased the Suce Creek Property from a $160,000 deposit made from Michael and MTL's account to Michael and Lauren's personal checking account. (Doc. 86-4 at 83.)

she made to Michael and Lauren, and that they were obligated to repay that money to her. (Doc. 99 at 5, and Doc. 99-3 at 8.) Thus, even if Lauren transferred $112,000 to Sakal on June 1, 2010, as repayment of Sakal's prior $112,000 loan, Sakal asserts that was only a partial repayment of the total $260,000 loan, leaving $148,000 as the balance due on the loan which Michael and Lauren owed Sakal.

Furthermore, Sakal, Michael, and Lauren all assert that Michael's conveyance of his interest in the Suce Creek Property to Sakal was made for the purpose of repaying Sakal for the balance of the total amount of the loans she had made to the Longs. Sakal had contributed financial resources for the purchase of the Suce Creek Property, and she asserts Michael and Lauren knew they owed Sakal repayment on the loans she had made to them. (Doc. 99-3 at 7, 8.) Michael confirmed in his deposition testimony that the transfer of his interest to Sakal was to repay her "for all of the good faith loans she had given" Michael and Lauren over the years. (Doc. 86-4 at 134.) Lauren's deposition testimony also confirms Michael transferred his interest to Sakal to repay her for loans she had provided to Michael and Lauren. (Doc. 99-3 at 26.) Thus, Sakal has presented sufficient evidence to raise a genuine issue of material fact as to whether Michael transferred his interest in the Suce Creek Property to satisfy an antecedent debt – the balance of which was $148,000 – that he owed to Sakal and, consequently, whether he

received value for his transfer to Sakal.

The United States further argues under Mont. Code Ann. § 31-2-333(1)(b)(ii) that Michael knew he was incurring debt beyond his ability to pay that debt around the time he transferred his interest to Sakal. The United States points to Michael's federal tax liability of which he was aware at the time, and to his potential liability exposure to Heart K.

But the record does not conclusively support the United States' position. The record reflects Michael had set aside $150,000 to pay his tax liability. Further, there is no evidence indicating Michael knew the full extent of his potential liability to Heart K as of February 16, 2011. Therefore, the United States has failed to establish the absence of genuine issues of material fact in support of its fraudulent conveyance claim under Mont. Code Ann. § 31-2-333(1)(b)(ii).

C.    **Foreclosure on Suce Creek Property**

The United States' fourth claim for relief in its counterclaims requests foreclosure of it federal tax liens which it asserts attached to Michael and Lauren's interests in the Suce Creek Property.[4] For the reasons stated, however, the United

---

[4]The parties have since entered a Stipulated Agreement permitting Sakal and Lauren to sell the Suce Creek Property. (Doc. 98-1.) The parties have also agreed that Heart K, the Montana Department of Revenue, and the United States' interests they possessed with respect to the Suce Creek Property will be enforced against the proceeds of sale of the property. (*Id*.)

States has failed to establish its entitlement to the foreclosures requested.

As a matter of law, the United States' statutory tax liens securing Michael and Lauren's tax liability arose under 26 U.S.C. § 6321 as of the date of the tax liability assessments made by the United States. 26 U.S.C. § 6322. The assessment dates for Michael and Lauren's 2009 tax-year liability are as follows:

| Assessment Dates | Amount Assessed |
| --- | --- |
| October 4, 2010 | $9,194.00 (Tax) |
| March 19, 2012 | $1,643.00 (Penalty) |
| March 19, 2012 | $11,202.00 (Tax) |
| March 19, 2012 | $678.11 (Interest) |

(Doc. 86 at ¶ 8.) And the assessment dates for Michael's 2010 tax-year liability are as follows:

| Assessment Dates | Amount Assessed |
| --- | --- |
| November 21, 2011 | $128,469.00 (Tax) |
| November 21, 2011 | $2,682.82 (Penalty) |
| November 21, 2011 | $1,551.63 (Interest) |

(Doc. 86 at ¶ 11.) Thus, the United States contends the tax liens for Michael's tax liability arose on October 4, 2010, November 21, 2011, and March 19, 2012, in the amounts stated. (Doc. 85 at 26.)

The record reflects that Michael and Lauren originally acquired their legal

25

interests in the Suce Creek Property by Warranty Deed on July 12, 2010. Michael, however, conveyed his legal interest to Sakal by a quit claim deed on February 16, 2011. Therefore, based solely on the assessment dates established by the United States, the only tax lien that arose and would have attached to Michael's interest in the Suce Creek Property before he transferred that interest is the October 4, 2010 tax lien stemming from the 2009 tax year.

But, as discussed, Sakal has presented evidence indicating that Michael and Lauren's 2009 federal tax obligations were satisfied on December 20, 2013, and the liens arising from the October 4, 2010, and the March 19, 2012 tax assessments for the 2009 tax year were released on December 31, 2013. (Doc. 99-3 at 67-68.) Consequently, Sakal has raised a genuine issue of material fact as to the United States' right to foreclose on its tax lien arising from the October 4, 2010 tax assessment that would have attached to Michael's interest in the Suce Creek Property.

The balance of the United States' tax liens asserted against Michael arose after he transferred his interest in the property to Sakal. A federal tax lien attaches only to property owned by the taxpayer at the time of the tax assessment. *United States v. Abbott*, 2003 WL 21968724, *2 (D. Nev. 2003). Because Michael transferred his interest in the Suce Creek Property to Sakal on February 16, 2011,

the United States' federal tax lien for the November 21, 2011 tax assessments made with respect to Michael's tax liability for the 2010 tax year did not arise until after Michael transferred his interest. Consequently, the United States' tax lien for the 2010 tax year did not, as a matter of law, attach to Michael's interest in the Suce Creek Property unless, of course, the United States can establish Michael's transfer was a fraudulent transfer. As discussed, however, the Court finds genuine issues of material fact exist with respect to the United States' fraudulent transfer claims. Therefore, the United States has not established that, as a matter of law, it is entitled to foreclose on its lien interests that arose from Michael's 2010 tax liability.

## IV.   CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that the United States' summary judgment motion be GRANTED with respect to the amount of Michael Long's federal tax liability stemming from the 2010 tax year, and a civil judgment for the amount of that tax liability should be entered. IT IS FURTHER RECOMMENDED that the balance of the United States' motion be DENIED.

DATED this 22nd day of January, 2014.

Jeremiah C. Lynch
United States Magistrate Judge